WOLL v ATTORNEY GENERAL (ON REMAND)

Docket Nos. 55437, 55438. Submitted October 19, 1981, at Detroit.—
Decided June 8, 1982.

Arthur S. Woll, an attorney, was indicted by the Wayne County
Citizens' Grand Jury for violating the solicitation statute with
respect to workers' compensation claims. Woll brought a declar-
atory judgment action against Frank J. Kelley, Attorney Gen-
eral of the State of Michigan, and William L. Cahalan, Wayne
County Prosecuting Attorney, in Wayne Circuit Court seeking
to have the Michigan statute prohibiting solicitation of per-
sonal injury claims declared unconstitutional. The court, Hor-
ace W. Gilmore, J., declared the statute to be unconstitution-
ally overbroad and violative of equal protection. The court
permanently enjoined enforcement of the statute. Defendants
appealed to the Court of Appeals, which reversed the circuit
court's decision, 80 Mich App 721; 265 NW2d 23 (1978). Approx-
imately 3-1/2 months earlier, another panel of the Court of
Appeals had held that the statute was unconstitutionally over-
broad. *People v Posner*, 79 Mich App 63; 261 NW2d 209 (1977).
Woll appealed to the Supreme Court, which consolidated his
appeal with the appeal in the *Posner* case and found that: (1)
the solicitation statute was applicable to workers' compensation
cases and that it was not violative of equal protection; (2)
although the statute was unconstitutionally overbroad, the
overbreadth could be cured by a limiting construction; (3) that
the statute provided fair notice to Woll of the conduct pro-
scribed and that retroactive application of its ruling was there-
fore permissible; and (4) that a defendant's due process rights
would be violated unless a limiting construction was applied to

REFERENCES FOR POINTS IN HEADNOTES

[1-8] 7 Am Jur 2d, Attorneys at Law § 62 *et seq.*
   "Ambulance chasing" or similar solicitation of personal injury cases
      as ground for disbarment, suspension, or other disciplinary ac-
      tion. 67 ALR2d 859.
[1-8] Advertising by attorney as ground for disbarment, suspension, or
      other disciplinary action. 39 ALR2d 1055.
[2, 5] 73 Am Jur 2d, Statutes § 346.
[6] 73 Am Jur 2d, Statutes § 199.

the statute prior to prosecution. The Supreme Court dismissed the charges against the attorneys in the Posner case without prejudice and remanded Woll's cause to the Court of Appeals and ordered it to give the statute a limiting construction consistent with the First Amendment to satisfy the due process challenge. As guidance, the Supreme Court provided that: (1) the solicitation statute does not apply to truthful advertising by a lawyer; (2) in-person solicitation for pecuniary gain could be prohibited as a prophylactic measure in circumstances in which there is a risk of overreaching, undue influence, or other evils; and (3) such solicitation cannot be punished unless it occurs in circumstances presenting such risks. The prophylactic measure cannot be so broad as to prohibit all lawyer solicitation for remuneration. The task presented to the Court of Appeals was to define what circumstances can be said to present risks of the evils that the state may legitimately attempt to avoid. On remand, *held:*

1. The solicitation statute should be construed to prohibit all in-person solicitation substantially motivated by pecuniary gain. Solicitation is defined as a situation where the solicitor's position or relation to a prospective client is such that his request may force the recipient into acquiescing to the plea. This definition serves to prevent those aspects of solicitation that involve fraud, undue influence, intimidation, and over-reaching. Since a letter normally will not sway or influence its reader to such a degree that his will would be dominated by the sender, mass mailings of letters should not be prohibited. A phone call, however, could be construed as solicitation under the definition of solicitation because there may be pressure to accept an offer immediately, thus depriving an individual of an opportunity to reflect and make a reasoned decision.

2. The circuit court's permanent injunction against enforcement of the solicitation statute is set aside. Arthur S. Woll may be reindicted under the statute as construed.

Remanded with instructions.

1. ATTORNEY AND CLIENT — SOLICITATION — TRUTHFUL ADVERTISING.

The solicitation statute does not apply to truthful advertising by a lawyer (MCL 750.410; MSA 28.642).

2. ATTORNEY AND CLIENT — SOLICITATION.

The state may, as a prophylactic measure, prohibit in-person solicitation of clients by lawyers for pecuniary gain where there is a risk of overreaching, undue influence, or other evils; however, the prophylactic measure cannot be so broad as to

prohibit all solicitation by lawyers for remuneration (MCL 750.410; MSA 28.642).

3. Attorney and Client — Solicitation.

Solicitation which is motivated by interests other than pecuniary gain, such as to advance political ideology, constitutes protected speech under the First Amendment (US Const, Am I).

4. Attorney and Client — Solicitation.

A state has a compelling interest in preventing those aspects of solicitation by an attorney that involve fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct; given a state's interest in avoiding harm by prohibiting personal solicitation for pecuniary gain in circumstances where harm is likely to occur, no actual harm or injury to persons solicited need be shown; solicitation may be proscribed when the method employed would present a significant danger of overreaching or undue influence.

5. Attorney and Client — Solicitation.

A prophylactic solicitation statute may not be so broad that it prohibits all lawyers' solicitation for remuneration; where an association operates a bona fide legal assistance or referral program, the resulting solicitations are done to advance the First Amendment associational interests of that association and therefore are not done primarily to advance a lawyer's pecuniary interest; an attorney who participates in a bona fide program of this sort shares in the association's First Amendment protection even if he personally participates solely for his own pecuniary gain (US Const, Am I).

6. Attorney and Client — Solicitation.

The Michigan solicitation statute should be construed to prohibit all in-person solicitation by an attorney substantially motivated by pecuniary gain; this construction limits application of the statute to situations where the attorney seeks to advance his own economic self-interest (MCL 750.410; MSA 28.462).

7. Words and Phrases — "Solicitation".

"Solicitation", for purposes of the Michigan solicitation statute, is a situation where the solicitor's position or relation to a prospective client is such that his request may force the recipient into acquiescing to the plea; such a definition best prevents those aspects of solicitation that involve fraud, undue influence, intimidation, and overreaching (MCL 750.410; MSA 28.462).

8. Attorney and Client — Solicitation — Mail — Telephone Calls.

> A letter normally does not sway or influence its reader to such a degree that his will is dominated by the sender; for this reason, mass mailings by attorneys to clients, in which the attorneys' services are promoted, should not be prohibited by the Michigan solicitation statute; telephone calls, on the other hand, may be construed as prohibited solicitation because there may be pressure to accept an offer immediately, thus depriving an individual of an opportunity to reflect and make a reasoned choice (MCL 750.410; MSA 28.462).

*Jules B. Olsman,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for Frank J. Kelley, Attorney General.

*William L. Cahalan,* Prosecuting Attorney, *Theodore Stephens,* Deputy Chief, Civil Division, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for William L. Cahalan.

Amici Curiae:

*Posner, Posner & Posner,* for Samuel Posner.

*Michael Franck,* Executive Director, and *Michael Karwoski,* Assistant to the Executive Director, for State Bar of Michigan.

*William L. Cahalan,* Prosecuting Attorney, *Patrick J. Foley,* Director, Wayne County Organized Crime Task Force, and *Paul S. Teranes,* Assistant Prosecuting Attorney, Wayne County Organized Crime Task Force, for the Prosecuting Attorney for Wayne County.

*Michael Alan Schwartz,* Grievance Administrator, and *Louis Rosenzweig,* Counsel to the Griev-

ance Administrator, for Attorney Grievance Commission.

## ON REMAND

Before: T. M. BURNS, P.J., and M. F. CAVANAGH and R. A. BENSON,* JJ.

R. A. BENSON, J. Plaintiff, Arthur S. Woll, is an attorney licensed in Michigan. On April 29, 1976, he was indicted by the Wayne County Citizens' Grand Jury for violating the provisions of the solicitation statute, MCL 750.410; MSA 28.642, with respect to workers' compensation claims. Wayne County Circuit Court Judge Horace W. Gilmore declared the statute to be unconstitutionally overbroad and violative of equal protection. He entered an order permanently enjoining enforcement of the statute.

Defendants appealed to this Court and the Court reversed the circuit court's decision. *Woll v Attorney General,* 80 Mich App 721; 265 NW2d 23 (1978). Plaintiff appealed to the Supreme Court, which consolidated the case with another case involving a challenge to the same statute. In the other case, a different panel of this Court held that the statute was unconstitutionally overbroad. *People v Posner,* 79 Mich App 63; 261 NW2d 209 (1977).

MCL 750.410; MSA 28.642 provides in part:

"*A person,* firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or any of the officers, agents, servants, employees, or members of any such person, firm, copartner-

* Circuit judge, sitting on the Court of Appeals by assignment.

ship, association or organization of any kind, either incorporated or unincorporated, or of any division, bureau or committee of that association or organization, either incorporated or unincorporated, *who shall directly or indirectly,* individually or by agent, servant, employee, or member, *solicit a person injured as the result of an accident,* his administrator, executor, heirs or assigns, his guardian, or members of the family of the injured person, *for the purpose of representing that person in making a claim for damages* or prosecuting an action or causes of action arising out of a personal injury claim against any other person, firm, or corporation, or to employ counsel for the purpose of that solicitation, *is guilty of a misdemeanor,* and shall upon conviction thereof, if a natural person, be punished by a fine not to exceed $500.00, or by imprisonment for a term not to exceed 6 months, or both. The same penalties shall apply upon conviction to a member of a copartnership, or an officer or agent of a corporation, association or other organization, or an officer or agent, who shall consent to, participate in, or aid or abet a violation of this section upon the part of the copartnership of which he is a member, or of the corporation, association or organization of which he is such an officer or agent. A contract entered into as a result of such a solicitation is void. This subsection shall not affect an unsolicited contract entered into by a person, firm, or corporation with an attorney duly admitted to practice law in this state." (Emphasis added.)

In *Woll v Attorney General,* 409 Mich 500; 297 NW2d 578 (1980), the Court first determined that the solicitation statute was applicable to workers' compensation cases and found that it was not violative of equal protection.

The Court then addressed the argument that the statute was impermissibly vague. Three aspects of this argument were considered.

First, the Court addressed the claim that the statute was overbroad and could impinge on First Amendment freedoms. Preliminarily, the Court

held that an overbreadth challenge based on the Supreme Court's decisions in *Bates v State Bar of Arizona,* 433 US 350; 97 S Ct 2691; 53 L Ed 2d 810 (1977), and *Ohralik v Ohio State Bar Ass'n,* 436 US 447; 98 S Ct 1912; 56 L Ed 2d 444 (1978), was unavailable since the statute involved the restriction of commercial speech. 409 Mich 500, 535-536. The Court also rejected the contention that an overbreadth challenge could be based on the statute's impingement on associational rights protected by the First Amendment:

"In *Broadrick v Oklahoma,* 413 US 601, 615-616; 93 S Ct 2908; 37 L Ed 2d 830 (1973), the United States Supreme Court declared that 'where *conduct* and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (Emphasis supplied.) Applying the real and substantial test, the Court concluded that the statute there presented was 'not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.'

\*     \*     \*

"We are inclined to the view that the solicitation statute does not represent 'the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized' in some of the decisions of the United States Supreme Court.

"That Court's decision in *United Transportation Union* holding that an injunction based on this very solicitation statute was unconstitutional, and its observation that 'the principle here involved cannot be limited to the facts of this case', makes it highly unlikely that any union would be deterred from engaging in the activities found there to be protected.

\*     \*     \*

"Any overbreadth of the solicitation statute can be cured by a limiting construction." (Footnotes omitted.) 409 Mich 500, 536-538.

The Court construed the solicitation statute to proscribe only solicitations done primarily to advance the "pecuniary interest of a lawyer who solicits or in whose interest solicitation is committed". *Id.,* 542. The Court held that the statutory prohibitions do not apply to truthful advertising by a lawyer.

The Court also rejected the claim that the statute failed to provide fair notice to Woll of the conduct proscribed. Therefore, it held that retroactive application was permissible. *Id.,* 544.

Finally, a general due process challenge was considered. The Court held that a defendant's due process rights would be violated unless a limiting construction was applied to the statute prior to prosecution. The Court stated in part:

"[A] limiting construction, making the statute expressly inapplicable to activities protected by *Bates* [433 US 350; 97 S Ct 2691; 53 L Ed 2d 810 (1977)] and *Ohralik* [436 US 447; 98 S Ct 1912; 56 L Ed 2d 444 (1978)], is necessary to prevent violation of a due-process right akin to that which protects one from application of a law so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.

"If prosecution were to proceed without benefit of a limiting construction, a person might be convicted for acts within the literal terms of the solicitation statute which cannot, by reason of *Bates* and *Ohralik,* be proscribed." *Id.,* 545.

Thus, although the statute was held to be constitutional, the Supreme Court dismissed the charges against the attorneys in the *Posner* case without

prejudice. It also remanded the *Woll* cause and ordered this Court to give the statute a limiting construction consistent with the First Amendment to satisfy the due process challenge after first having given interested parties the opportunity to submit briefs and make arguments. As guidance, the Supreme Court provided some observations:

> "At this time we can provide only a partial limiting construction. Because of *Bates,* we hold that the solicitation statute does not apply to truthful advertising by a lawyer.
>
> "The United States Supreme Court held in *Ohralik* that in-person solicitation for pecuinary gain could be prohibited as a prophylactic measure in circumstances in which there is a risk of overreaching, undue influence, or other evils.
>
> "The implication of the Court's holding is that such solicitation cannot be punished unless it occurs in circumstances presenting such risks. The task, then, is to define what circumstances can be said to present risks of the evils that the state may legitimately attempt to avoid.
>
> "We have previously determined that the prophylactic measure cannot be so broad as to prohibit all lawyer solicitation for remuneration. In *State Bar Grievance Administrator v Jaques (On Remand),* Jaques did not directly approach potential clients; instead, he was found to have asked a union official to recommend his services to others. We held that the disciplinary rule could not reach such conduct because in that situation there was no significant danger of overreaching.
>
> "*Ohralik* still might be read as allowing a prohibition of all communciations with potential clients by the lawyer or someone acting solely for him, but even this may be too broad a proscription." (Footnotes omitted.) 409 Mich 500, 549-550.

Accordingly, the statute must be construed in a manner consistent with these guidelines. Plaintiff contends that this Court should hold that the

statute is unconstitutional because it is impossible to apply a limiting construction to the statute. In particular, plaintiff contends that since *Ohralik v Ohio State Bar Ass'n, supra,* and *Bates v State Bar of Arizona, supra,* both dealt with disciplinary rules rather than criminal statutes, they are inapplicable to the instant case. However, plaintiff cites no authority in support of this contention and we are aware of none. Plaintiff's position must be rejected. The Supreme Court has found the statute to be constitutional although in need of construction to cure due process problems. This Court, as an inferior tribunal, is constrained to follow the orders of the Supreme Court.

We must next determine what type of activities may be punished under the solicitation statute. The parameters of permissible regulation are evidenced by several decisions.

In *Bates v State Bar of Arizona, supra,* two attorneys were convicted of violating a state disciplinary rule which prohibited attorneys from advertising in newspapers or other media. The United States Supreme Court reversed and held that truthful advertising by attorneys regarding the availability and prices of certain legal services, although a form of commercial speech, was nonetheless protected under the First Amendment. The *Bates* Court rejected arguments by the Arizona State Bar that such attorney advertising would have an adverse effect on professionalism, would be inherently misleading, would have an adverse effect on the administration of justice and the quality of legal services and would produce undesirable economic effects. It also refused to sanction blanket suppression on the ground that a rule permitting limited advertising would be difficult to enforce. The Court did hold that advertisements

that are false, deceptive or misleading could be restrained and that, as with other types of speech, the time, place, and manner of advertising could still be subject to reasonable restrictions. 433 US 350, 383-384. While a state may properly restrict dissemination of information which may be illegal, misleading, or deceptive, truthful advertising is protected under the First Amendment.

In the companion cases of *In re Primus,* 436 US 412; 98 S Ct 1893; 56 L Ed 2d 417 (1978), and *Ohralik v Ohio State Bar Ass'n, supra,* the United States Supreme Court made a clear distinction between attorney solicitation which essentially constitutes a form of political expression or association and that which essentially constitutes a proposed commercial transaction.

In *Primus,* an attorney associated with the American Civil Liberties Union addressed a group of potential clients concerning the question of coerced sterilization. She advised them of their legal rights and suggested the possibility of a lawsuit. Shortly thereafter, the attorney wrote to one woman who had been in the audience and informed her of the ACLU's offer of free legal representation in the matter. The disciplinary board of the South Carolina Supreme Court found that the attorney had violated its disciplinary rules pertaining to solicitation and issued a reprimand.

Since the letter was not prompted by pecuniary motive, the United States Supreme Court addressed the issue of whether a state could punish a member of its bar who sought to further political and ideological goals through associational activity, including potential litigation. The Court traced the evolution of cases developing the concept of access to legal representation under the First

Amendment from *NAACP v Button,* 371 US 415; 83 S Ct 328; 9 L Ed 2d 405 (1963), through *United Transportation Union v State Bar of Michigan,* 401 US 576; 91 S Ct 1076; 28 L Ed 2d 339 (1971):

"Subsequent decisions have interpreted *Button* as establishing the principle that 'collective activity undertaken to obtain meaningful access to the courts is a fundmental right within the protection of the First Amendment.' *United Transportation Union v Michigan Bar,* 401 US 576, 585 [91 S Ct 1076, 1082; 28 L Ed 2d 339] (1971). See *Bates v State Bar of Arizona,* 433 US 350, 376, fn 32 [97 S Ct 2691, 2705; 53 L Ed 2d 810] (1977). The Court has held that the First and Fourteenth Amendments prevent state proscription of a range of solicitation activities by labor unions seeking to provide low-cost, effective legal representation to their members. See *Railroad Trainmen v Virginia Bar,* 377 US 1 [84 S Ct 1113; 12 L Ed 2d 89] (1964); *Mine Workers v Illinois Bar Ass'n,* 389 US 217 [88 S Ct 353; 19 L Ed 2d 426] (1967); *United Transportation Union v Michigan Bar, supra.* And 'lawyers accepting employment under [such plans] have a like protection which the State cannot abridge.' *Railroad Trainmen, supra,* 1, 8. Without denying the power of the State to take measures to correct the substantive evils of undue influence, overreaching, misrepresentation, invasion of privacy, conflict of interest, and lay interference that potentially are present in solicitation of prospective clients by lawyers, this Court has required that 'broad rules framed to protect the public and to preserve respect for the administration of justice' must not work a significant impairment of 'the value of associational freedoms.' *Mine Workers, supra,* 217, 222." 436 US 412, 426.

The Court held that the attorney's letter came within the "generous zone of First Amendment protection reserved for associational freedoms". The Court recognized that the ACLU engages in litigation as a vehicle for political expression and

association as well as a means of communicating useful information to the public. The attorney's actions were protected by the First and Fourteenth Amendments. The Court also found significant the fact that the attorney contact was by letter, not in person. The Court noted that such means of communication did not afford significant opportunity for overreaching or coercion. *Id.,* 435-436. Under *Primus,* solicitation which is motivated by interests other than pecuniary gain, such as to advance political ideology, constitutes protected speech under the First Amendment.

In the companion case of *Ohralik v Ohio State Bar Ass'n, supra,* the Supreme Court outlined the type of solicitation which could be proscribed by state bar disciplinary rules.

In *Ohralik,* the Court dealt with a lawyer who approached two young women to solicit their personal injury claims. The solicitation took place shortly after the women had been involved in a traumatic automobile accident. One woman was in traction and still at the hospital; the other had just been released. Both were in pain and possibly on medication. These facts led the court to conclude that the solicitation was improper. It was held that such conduct differed from the public advertising approved in *Bates, supra:*

"In-person solicitation by a lawyer of remunerative employment is a business transaction in which speech is an essential but subordinate component. While this does not remove the speech from the protection of the First Amendment, as was held in *Bates* and *Virginia Pharmacy,* it lowers the level of appropriate judicial scrutiny.

"* * * Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without

providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking * * *." 436 US 447, 457. (Footnote omitted.)

The Court went on to state that such in-person solicitation may create a situation where an attorney's exercise of judgment on behalf of a client will be clouded by his own pecuniary self-interest. *Id.,* 461. It found that the attorney could not contend that his action involved political expression or an exercise of associational freedom as was the case in *In re Primus, supra.* The Court found that the state had a strong interest in regulating such activities to protect consumers and also to maintain standards of conduct for its licensed professions. *Id.,* 460. Therefore, the Court concluded that a state has a compelling interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct. *Id.,* 462. Given a state's interest in avoiding harm by prohibiting personal solicitation for pecuniary gain in circumstances where harm is likely to occur, no actual harm or injury to persons solicited need be shown. *Id.,* 466-468. Under *Ohralik,* solicitation may be proscribed when the method employed would present a significant danger of overreaching or undue influence.

It must be remembered that a prophylactic statute may not be so broad that it prohibits all lawyers' solicitation for remuneration. Where an association operates a bona fide legal assistance or referral program, the resulting solicitations are done to advance the First Amendment associational interests of that association and therefore are not done primarily to advance a lawyer's

pecuniary interest. The attorney who participates in a bona fide program of this sort shares in the association's First Amendment protection even if he personally participates solely for his own pecuniary gain. *Woll v Attorney General, supra,* 542, fn 63. Despite the dangers of solicitation, a blanket prohibition cannot be tolerated even if the activity is motivated by economic self-interest. The appropriate inquiry is whether the particular conduct of an attorney is likely to result in the adverse consequences which a state has a legitimate and important interest in prohibiting. *State Bar Grievance Administrator v Jaques (On Remand),* 407 Mich 26, 37-38; 281 NW2d 469 (1979). In *Jaques,* the attorney solicited a union business agent who was asked to recommend a lawyer to victims of an industrial accident. The Court held that such conduct did not rise "to the level of 'fraud, undue influence, intimidation, overreaching, and other forms of "vexatious conduct" ' " because the union business agent "served as a buffer between the attorney and prospective clients thus alleviating the potential for overreaching and undue influence".

The solicitation statute must be construed in a manner consistent with the parameters set forth in the foregoing opinions.

After reviewing the briefs of the parties and amici curiae, we conclude that the solicitation statute should be construed to prohibit all in-person solicitation substantially motivated by pecuniary gain, as recommended by amicus State Bar of Michigan. This construction accounts for the limitations set forth in *In re Primus, supra,* by limiting application of the statute to situations where the attorney seeks to advance his own economic self-interest. We define solicitation as a situation

where the solicitor's position or relation to a prospective client is such that his request may force the recipient into acquiescing to the plea. In defining solicitation in this manner, the statute could best prevent those aspects of solicitation that involve fraud, undue influence, intimidation, and overreaching. Under the proposed construction, mass mailings would not be prohibited. We conclude that normally a letter would not sway or influence its reader to such a degree that his will would be dominated by the sender. The problem of undue influence and overreaching would not appear to apply in such a context. But see *Koffler v Joint Bar Ass'n,* 51 NY2d 140; 432 NYS2d 872; 412 NE2d 927 (1980). On the other hand, we find that a phone call could be construed as solicitation under this definition. In such a situation, there may be pressure to accept an offer immediately, thus depriving an individual of an opportunity to reflect and make a reasoned decision.

We feel that the proposed construction would best advance the state's strong interest in protecting consumers and regulating the legal profession without running afoul of First Amendment freedoms. *Central Hudson Gas & Electric Corp v Public Service Comm of New York,* 447 US 557; 100 S Ct 2343; 65 L Ed 2d 341 (1980).

We set aside Judge Gilmore's permanent injunction against enforcment of the solicitation statute. Arthur S. Woll may be reindicted under the statute as construed by this opinion.