**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 2, 2008

WILLIAM MILLER,

     Plaintiff-Appellee,

v                     No. 134393

ALLSTATE INSURANCE COMPANY,

     Defendant/Cross-Defendant-Appellant,

and

PT WORKS, INC.,

     Cross-Plaintiff-Appellee.

_____

WILLIAM MILLER,

     Plaintiff-Appellee,

v                     No. 134406

ALLSTATE INSURANCE COMPANY

     Defendant/Cross-Defendant-Appellee,

and

PT WORKS, INC.,

     Cross-Plaintiff-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider: (1) whether plaintiff corporation was improperly incorporated under the Business Corporations Act (BCA), MCL 450.1101 *et seq.*; and, if so, (2) whether an improperly incorporated entity rendering physical therapy treatment has "lawfully" rendered such treatment under MCL 500.3157. However, because defendant insurance company lacks statutory standing to challenge plaintiff's corporate status under MCL 450.1221, which grants the power to challenge corporate status solely to the Attorney General, the above questions are not properly before us. Accordingly, we affirm the judgment of the Court of Appeals in plaintiff's favor, albeit on alternative grounds, and we remand to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

William Miller was injured in separate car accidents on February 27, 2002, and September 13, 2002.[1] Miller was diagnosed with whiplash; his doctor prescribed physical therapy, and referred Miller to plaintiff PT Works, Inc. Miller was treated by PT Works from April 2, 2003, through August 28, 2003, incurring a bill for $29,150.

---

[1] Although William Miller is the named plaintiff in this case, he is no longer involved in the litigation; hence, all references to "plaintiff" are to cross-plaintiff PT Works, Inc., and all references to "defendant" are to cross-defendant Allstate Insurance Company.

2

Miller was insured with defendant Allstate Insurance Company (Allstate). PT Works billed Allstate for $29,150, but Allstate refused to pay. Miller then filed this lawsuit against Allstate for no-fault benefits, and subsequently assigned his claim to PT Works, who then filed a claim against Allstate as cross-plaintiff.

Allstate moved for summary disposition, arguing that PT Works was unlawfully incorporated under the BCA, because PT Works was required to incorporate under the Professional Services Corporations Act (PSCA), MCL 450.221 *et seq*. Allstate argued that, because it was obligated to pay no-fault benefits only for treatment "lawfully" rendered, MCL 500.3157, PT Works could not recover no-fault benefits if it was unlawfully incorporated. The trial court denied Allstate's motion, concluding that physical therapy did not constitute "professional services" under the PSCA, and hence PT Works could incorporate under the BCA.

Allstate appealed, and the Court of Appeals affirmed. *Miller v Allstate Ins Co*, 272 Mich App 284; 726 NW2d 54 (2006). The Court of Appeals held that, regardless of whether PT Works was lawfully incorporated under the BCA, the treatment rendered to Miller was "lawful" under MCL 500.3157 because it was rendered by properly licensed physical therapists. *Id*. at 286-287.

Allstate then filed an application for leave to appeal with this Court, and, in lieu of granting leave, we vacated the initial Court of Appeals judgment and remanded to the Court of Appeals to consider whether PT Works was lawfully

3

incorporated and, if PT Works was unlawfully incorporated, to reconsider whether treatment was lawfully rendered. 477 Mich 1062 (2007).

On remand, the Court of Appeals again affirmed the trial court's denial of summary disposition. *Miller v Allstate Ins Co* (*On Remand*), 275 Mich App 649; 739 NW2d 675 (2007). The Court of Appeals held that PT Works could have incorporated under the PSCA, and thus was unlawfully incorporated under the BCA, citing MCL 450.1251(1).[2] *Id*. at 654. In particular, the Court of Appeals noted that physical therapy constituted a personal service to the public, and required a license under Michigan law. *Id*. However, the Court of Appeals adopted its prior analysis and concluded that the improper incorporation under the BCA did not render the treatment "unlawful" under MCL 500.3157. *Id*. at 655-658.

PT Works appealed the decision of the Court of Appeals that it was unlawfully incorporated. In a separate application, Allstate appealed the decision of the Court of Appeals that, despite the unlawful incorporation, the treatment was "lawfully rendered." This Court granted both applications for leave to appeal. 480 Mich 938 (2007).

---

[2] MCL 450.1251(1) of the BCA states:

> A corporation may be formed under this act for any lawful purpose, except to engage in a business for which a corporation may be formed under any other statute of this state unless that statute permits formation under this act.

4

## II. STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. *Lash v Traverse City*, 479 Mich 180, 186; 735 NW2d 628 (2007).

## III. ANALYSIS

Our constitution requires that a plaintiff possess standing before a court can exercise jurisdiction over that plaintiff's claim. *Rohde v Ann Arbor Public Schools*, 479 Mich 336, 346; 737 NW2d 158 (2007). This constitutional standing doctrine is longstanding and stems from the separation of powers in our constitution. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 612; 684 NW2d 800 (2004). Because the constitution limits the judiciary to the exercise of "judicial power," Const 1963, art 6, § 1, the Legislature encroaches on the separation of powers by attempting to grant standing to litigants who do not meet constitutional standing requirements.[3] *Rohde*, *supra* at 350.

---

[3] To establish constitutional standing, a plaintiff must satisfy three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." [*Nat'l Wildlife Federation*, *supra* at 628-629 (citations omitted).]

Although the Legislature cannot *expand* beyond constitutional limits the class of persons who possess standing, the Legislature may permissibly *limit* the class of persons who may challenge a statutory violation. That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides. This doctrine has been referred to as a requirement that a party possess "statutory standing." See, e.g., *Graden v Conexant Systems, Inc*, 496 F3d 291, 294 (CA 3, 2007). Statutory standing "simply [entails] statutory interpretation: the question it asks is whether [the Legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id*. at 295 (emphasis in original).

In this case, plaintiff asks this Court to conclude that, under the express terms of the BCA, defendant may not bring any challenge against plaintiff's corporate status. That is, defendant's lack of statutory standing would act as a jurisdictional bar to defendant's affirmative defense that plaintiff was unlawfully incorporated. If the BCA categorically bars defendant's claim, then the lower courts should not have considered the substance of defendant's claim, as they each did in different ways; rather, they should have simply determined that defendant may not raise the affirmative defense that plaintiff was unlawfully incorporated. Accordingly, before considering whether an entity is lawfully incorporated under the BCA, a court must consider whether the party challenging corporate status has statutory standing to raise that claim.

Statutory standing, which necessitates an inquiry into whether a statute authorizes a plaintiff to sue at all, must be distinguished from whether a statute permits an individual claim for a particular type of relief. See *Steel Co v Citizens for a Better Environment*, 523 US 83, 92; 118 S Ct 1003; 140 L Ed 2d 210 (1998) (distinguishing between "whether [a statute] authorizes this plaintiff to sue" and "whether the scope of the [statutory] right of action includes past violations," and stating that the latter "goes to the merits and not to statutory standing"). The statutory standing inquiry is generally jurisdictional; the claim-for-relief inquiry is non-jurisdictional. *Lerner v Fleet Bank, NA*, 318 F3d 113, 127 (CA 2, 2003); see also *Steel Co*, *supra* at 92 (stating that the claim for relief inquiry is non-jurisdictional, and contrasting that inquiry with the statutory standing inquiry); *Northwest Airlines, Inc v Kent Co*, 510 US 355, 365; 114 S Ct 855; 127 L Ed 2d 183 (1994) ("The question whether a . . . statute creates a claim for relief is not jurisdictional."); but see *Canyon Co v Syngenta Seeds, Inc*, 519 F3d 969, 975 n 7 (CA 9, 2008) (rejecting the proposition that statutory standing is jurisdictional). We acknowledge that the line dividing these inquiries is not always susceptible to easy demarcation; as *Steel Co* points out, "the merits inquiry and the statutory standing inquiry often 'overlap.'" *Steel Co*, *supra* at 97 n 2, quoting *Nat'l R Passenger Corp v Nat'l Ass'n of R Passengers*, 414 US 453, 456; 94 S Ct 690; 38 L Ed 2d 646 (1974).

An example illustrates the distinction. This Court considered during its last term whether an individual plaintiff "may maintain a private cause of action for

7

money damages against" a public employer for a violation of MCL 15.602.[4] *Lash*, *supra* at 191. We held that, based on the text of the statute, "the Legislature did not intend to create a private cause of action for violation of this particular provision." *Id*. at 196. We further noted that the plaintiff could seek enforcement of the statute through a claim for injunctive relief or a declaratory judgment. *Id*. at 196-197. Thus, an individual plaintiff could bring *some* cause of action to enforce MCL 15.602, thereby indicating that an individual plaintiff has statutory standing. However, an individual plaintiff could not bring every *particular* type of action, namely in that case an action for money damages. This latter question goes to the scope of the cause of action.

Two conclusions should be drawn from this. First, a determination that a plaintiff lacks statutory standing to assert a cause of action is essentially the equivalent of concluding that a plaintiff cannot bring *any* action in reaction to an alleged legal violation. Second, an inquiry regarding statutory standing and an inquiry regarding the merits of a particular claim for relief both follow the same method: both analyze the statutory language to determine legislative intent. However, the two inquiries ask different questions: the former asks whether any plaintiff may ever assert a violation of the statute, whereas the latter asks whether the plaintiff may assert a particular cause of action for the violation.

---

[4] This statute restricts a public employer's ability to impose residency restrictions on employees.

8

Here, the initial question is whether defendant Allstate may challenge the incorporation of PT Works under the BCA.[5]  Because the relevant question is whether the BCA authorizes defendant to make such a challenge, the issue presented is properly characterized as one of statutory standing.

MCL 450.1221 of the BCA states:

> The corporate existence shall begin on the effective date of the articles of incorporation as provided in [MCL 450.1131[6]].  Filing is conclusive evidence that all conditions precedent required to be performed under this act have been fulfilled and that the corporation has been formed under this act, except in an action or special proceeding by the attorney general.

This statute indicates that once articles of incorporation under the BCA have been filed, such filing constitutes "conclusive evidence" that: (1) all the requirements for complying with the BCA have been fulfilled; and (2) the corporation has

---

[5] Ordinarily, statutory standing questions involve a challenge to a *plaintiff's* standing.  Here, however, plaintiff challenges defendant's ability to assert plaintiff's allegedly unlawful incorporation under the BCA as an affirmative defense.  If the BCA prevents defendant from bringing an original action against plaintiff based on unlawful incorporation, then it would be illogical to permit defendant to assert the same grounds as an affirmative defense.  See, e.g., *Cinema North Corp v Plaza At Latham Assoc*, 867 F2d 135, 139 (CA 2, 1989) (stating that ordinarily a guarantor who has been sued does not possess standing to assert, as an affirmative defense, a claim that inheres in a principal); *United States v Dunifer*, 997 F Supp 1235, 1239 (ND Cal, 1998) ("Where the defendant asserts an affirmative defense requiring the litigation of issues not encompassed in the plaintiff's case-in-chief, the defendant is in a similar situation on those issues to a plaintiff who is invoking the jurisdiction of the court.").  Accordingly, we must inquire into whether defendant has statutory standing to assert this particular affirmative defense.

[6] MCL 450.1131 establishes general procedures for filing articles of incorporation.

9

actually been formed in compliance with the BCA. Thus, the statute generally creates an irrebuttable presumption of proper incorporation once the articles of incorporation have been filed.[7] The statute then creates a single exception to this general rule by granting the Attorney General the sole authority to challenge whether a corporation has been properly incorporated under the BCA. That is, only the Attorney General is not affected by the irrebuttable presumption in favor of legality. By naming only the Attorney General in this respect, the Legislature has indicated that the Attorney General alone has the authority to challenge corporate status, under the principle "*expressio unius est exclusio alterius*," that is, "the expression of one thing is the exclusion of another." *Miller v Chapman Contracting*, 477 Mich 102, 108 n 1; 730 NW2d 462 (2007). Thus, the filing of the articles of incorporation serves as "conclusive evidence" that PT Works has been properly formed, and this Court cannot, under the terms of MCL 450.1221, conclude otherwise, except as a consequence of a suit brought by the Attorney General.

In essence, MCL 450.1221 prevents any person-- other than the Attorney General-- from bringing any challenge to corporate status under the BCA: every such challenge would be doomed to failure, because the mere filing of articles of

---

[7] In contrast with the irrebuttable presumption established in MCL 450.1221, the Legislature has on other occasions created rebuttable presumptions. See, e.g., MCL 333.17031(3) (filing a written statement regarding educational history creates a "rebuttable presumption" that statement was filed "in good faith").

incorporation constitutes "*conclusive* evidence" of the corporation's legality. Because the Legislature has expressly forbidden Allstate from raising the affirmative defense asserted in this litigation, Allstate lacks statutory standing to challenge the corporate status of PT Works.[8]

Moreover, MCL 450.1221 presents a jurisdictional bar to defendant's affirmative defense. Because MCL 450.1221 indicates that only the Attorney

---

[8] This conclusion is bolstered by other provisions of the BCA that limit the authority of certain individuals to challenge proper incorporation. The BCA, MCL 450.1821, states:

(1) The attorney general may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located for dissolution of a corporation upon the ground that the corporation has committed any of the following acts:

(a) Procured its organization through fraud.

(b) Repeatedly and willfully exceeded the authority conferred upon it by law.

(c) Repeatedly and willfully conducted its business in an unlawful manner.

(2) The enumeration in this section of grounds for dissolution does not exclude any other statutory or common law action by the attorney general for dissolution of a corporation or revocation or forfeiture of its corporate franchises.

Thus, MCL 450.1821 vests authority in the Attorney General to pursue dissolution of a corporation. Similarly, MCL 450.1823 permits the shareholders and directors of a corporation to pursue dissolution under certain circumstances. See also MCL 450.1488(1)(g) (allowing shareholders to dissolve a corporation by agreement). Because the expression of one thing is the exclusion of another, *Chapman Contracting*, *supra* at 108 n 1, these statutes indicate that an outside party may not pursue dissolution, and thus reflect a general legislative intent to prevent outside parties from challenging an entity's corporate status under the BCA.

11

General may pursue a claim that a corporation such as plaintiff is improperly incorporated under the BCA, the lower courts should not have considered the merits of Allstate's claim.

Allstate argues that MCL 450.1221 sets forth a general rule that only the Attorney General may challenge corporate status under the BCA, but that the no-fault act, MCL 500.3157, provides a specific exception to that general rule. MCL 500.3157 states in part:

> A physician, hospital, clinic or other person or institution *lawfully* rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. [Emphasis added.]

"[S]pecific provisions . . . prevail over any arguable inconsistency with the more general rule . . . . " *Jones v Enertel, Inc*, 467 Mich 266, 271; 650 NW2d 334 (2002). The question raised by Allstate is how to ascertain which provision is more specific and which is more general. As with any question of statutory interpretation, we examine the language of the statutes to discern the Legislature's intent. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007). In order to determine which provision is truly more specific and, hence, controlling, we consider which provision applies to the more narrow realm of circumstances, and which to the more broad realm. MCL 500.3157 grants a right to insurers to refuse payment for treatment that is unlawfully rendered. This right encompasses all forms of unlawfulness, and hence would seem to apply to

12

the challenge made here. However, MCL 450.1221 applies to one specific form of unlawfulness-- improper corporate formation. Because MCL 450.1221 applies to one form of unlawfulness, and MCL 500.3157 applies to all forms, MCL 450.1221 is the more specific provision and, therefore, prevails over MCL 500.3157.

Contrary to Allstate's argument, MCL 500.3157 does not specifically grant an insurer the right to challenge *all* forms of lawfulness, regardless of other statutes that impose limitations or exceptions upon such an ability. Rather, MCL 500.3157 sets up a general ability to challenge lawfulness, but neither states nor implies that a right has been established that trumps any other statutory limitation on an insurer's ability to contest the lawfulness of treatment. Hence, Allstate's argument fails, and we conclude that MCL 450.1221 prevents an insurer from challenging the corporate status of a corporation formed under the BCA.[9]

Although our analysis rests solely on our interpretation of the relevant statutes, we note that MCL 450.1221 encapsulates at least 100 years of common-law practice in Michigan. In *Int'l Harvester Co of America v Eaton Circuit Judge*, 163 Mich 55; 127 NW 695 (1910), this Court stated:

> This brings us to the doctrine, founded in public policy and convenience and supported by an almost unanimous consensus of judicial opinion, which is that rightfulness of the existence of a body claiming to act, and in fact acting in the face of the State, as a

---

[9] We emphasize that in no way are we passing judgment on the lawfulness of plaintiff's incorporation. Because a court cannot entertain an individual's challenge to corporate status under MCL 450.1221, plaintiff must be presumed lawfully formed until its incorporation has been successfully challenged by the Attorney General.

13

> corporation, cannot be litigated in actions between private individuals, or between private individuals and the assumed corporation, but that the rightfulness of the existence of the corporation can be questioned only by the State; in other words, that the question of the rightful existence of the corporation cannot be raised in a collateral proceeding. [*Id*. at 67 (quotations and citation omitted).]

Indeed, Michigan courts have long held that the state possesses the sole authority to question whether a corporation has been properly incorporated under the relevant law. See, e.g., *Flueling v Goeringer*, 240 Mich 372, 375; 215 NW 294 (1927) (stating that a particular taxicab company "is a corporation, and its right to be such under the provisions of the act authorizing corporations . . . , if questioned, must be at the instance of proper State authority"); *Allied Supermarkets, Inc v Grocer's Dairy Co*, 45 Mich App 310, 317; 206 NW2d 490 (1973) ("Only the state may challenge the validity of an incorporation."); see also OAG, 1981-1982, No 5893, pp 167-168 (May 8, 1981) ("The validity of an incorporation can be questioned only by the state in a proper proceeding and cannot be questioned collaterally."), citing *Besson v Crapo Toll Rd*, 150 Mich 655; 114 NW 924 (1908). Moreover, a party cannot raise an argument challenging a corporation's corporate status in a collateral proceeding; rather, such an argument may only be brought in a direct proceeding to challenge such status. *Attorney General v Lapeer Farmers Mut Fire Ins Ass'n*, 297 Mich 174, 184; 297 NW 232 (1941); *Cahill v Kalamazoo Mut Ins Co*, 2 Doug 124, 141 (Mich 1845). Thus, in historical context, MCL 450.1221 codifies Michigan's longstanding common-law practice of only

14

permitting the state to challenge corporate status, and to do so only in a direct proceeding on that issue.

One need not look far to ascertain the merits of this limitation. As one treatise states:

> It would produce endless confusion and hardship, and probably destroy the corporation, if the legality of its existence could be drawn in question in every suit to which it was a party . . . . [18A Am Jur 2d, Corporations, § 208, p 88.]

Indeed, if the legality of every Michigan corporation were subject to continual assault by any person, it would be difficult to see how a stable economic climate could ever exist. Relevant to this case, no insured person could obtain medical treatment without undertaking a laborious inquiry into whether the entity providing treatment has complied with every applicable corporate statute and regulation. Whether an insured person could obtain benefits would largely depend on the ingenuity of lawyers in ferreting out aspects of corporate non-compliance with applicable statutes. However, the Legislature has deemed it fit that residents of Michigan may depend on the corporate status of any corporation formed under the BCA and approved by the state, and we do nothing more here than enforce that policy decision-- a decision rooted in relevant statutes and in longstanding judicial practice.

## IV. CONCLUSION

Because Allstate lacks statutory standing to assert that PT Works was improperly incorporated, the Court of Appeals correctly held that summary

15

disposition should be granted to PT Works, albeit on alternative grounds. Accordingly, we affirm the conclusion of the Court of Appeals, but vacate its rationale, and we remand to the trial court for further proceedings consistent with this opinion.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.


CAVANAGH, J.  I concur in the result only.


Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

WILLIAM MILLER,

    Plaintiff-Appellee,

v                                        No. 134393

ALLSTATE INSURANCE COMPANY,

    Defendant/
    Cross-Defendant-Appellant,

and

PT WORKS, INC.,

    Cross-Plaintiff-Appellee.

_____

WILLIAM MILLER,

    Plaintiff-Appellee,

v                                        No. 134406

ALLSTATE INSURANCE COMPANY,

    Defendant/
    Cross-Defendant-Appellee,

and

PT WORKS, INC.,

    Cross-Plaintiff-Appellant.

_____

WEAVER, J. (*concurring in the result only*).

I concur in the result of the majority opinion because defendant Allstate Insurance Company lacks the authority to challenge the corporate status of cross-plaintiff PT Works, Inc. Under MCL 450.1221, only the Attorney General is authorized to challenge an entity's corporate status.

I write separately because I disagree with the opinion's strained discussion of the standing test erroneously created by the majority of four (Chief Justice Taylor and Justices Corrigan, Young, and Markman) in *Lee v Macomb Co Bd of Comm'rs*,[1] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*,[2] *Rohde v Ann Arbor Pub Schools*,[3] and *Michigan Citizens for Water Conservation v Nestlé Waters North America Inc*.[4] In those cases, the majority of four systematically dismantled Michigan's law on standing and replaced years of precedent with its own test that denies Michigan citizens access to the courts.[5]

> Elizabeth A. Weaver
> Marilyn Kelly

---

[1] *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 629 NW2d 900 (2001).

[2] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004).

[3] *Rohde v Ann Arbor Pub Schools*, 479 Mich 336; 737 NW2d 158 (2007).

[4] *Michigan Citizens for Water Conservation v Nestlé Waters North America Inc*, 479 Mich 280; 737 NW2d 447 (2007).

[5] See my opinions chronicling the majority of four's assault on standing in *Lee*, 464 Mich at 742; *Nat'l Wildlife*, 471 Mich at 651; *Rohde*, 479 Mich at 366; and *Michigan Citizens*, 479 Mich at 310.